## MICHAEL B. BUKOWSKI v. HAROLD JURANEK AND OTHERS.[1]

December 31, 1948.

No. 34,779.

[1]Reported in 35 N. W. (2d) 427.

*L. P. Johnson,* for appellant.

*R. M. Saltness* and *H. W. Swenson,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action to recover for damages sustained by plaintiff on August 19, 1946, when he alleges he was "assaulted, beat and bruised" by defendants. Maynard Degrea, named as a defendant in the action, who actually inflicted the injuries sustained by plaintiff, was not served with process and is not a party. The remaining defendants are charged with (1) planning and conspiring to inflict such injuries, and (2) participating in the assault by counseling, directing, and aiding Degrea in connection therewith. The jury returned a verdict for defendants.

On appeal, plaintiff asserts that the court erred in its refusal to give certain of plaintiff's requested instructions, and that it further erred in the charge actually given to the jury.

Evidence submitted by plaintiff indicates that the defendants Juranek, plaintiff, and others jointly owned and operated a small threshing outfit for some years prior to August 19, 1946; that on that date, which marked the end of their 1946 threshing season, they were engaged in threshing a small tract of land farmed by defendant Willis Juranek; that late that day, while the threshing crew was at lunch in the field, a jesting conversation arose with reference to tossing plaintiff's shoes into the separator upon completion of the day's work, in accordance with the crew's custom for some years

past of throwing some old article of wearing apparel into the separator with the final bundle. Plaintiff testified with reference thereto as follows:

"Well, they just said that they were going to throw my shoes in the separator when they got through."

Asked if defendant Harold Juranek had taken part in this conversation, plaintiff replied:

"I believe he did; he made a few remarks.

\* \* \* \* \*

"They seemed to talk about it but they dropped it and didn't say any more.

\* \* \* \* \*

"Well, I just don't remember but it was either Harold or Alvin.

\* \* \* \* \*

"\* \* \* they didn't talk about it too much because I said I wasn't going to let them do it and then they dropped it."

Asked if defendant Willis Juranek took part in the conversation, he replied:

"No, they didn't talk about it too much \* \* \*."

Harold Juranek denied making any such statements or suggestions. Alvin Juranek, his brother, also a member of the crew but not named defendant, testified that it was he who made reference to plaintiff's shoes, and that shortly thereafter he left for home and took no part in the subsequent events.

Plaintiff further testified that later, while he was alone on the south side of the separator, he noticed defendants and other crew members talking, although he did not hear their conversation; that he believed they were about to throw his shoes into the separator; that he had been using his own team and rack, and immediately proceeded to get onto his rack for the purpose of driving it home; that Degrea followed him and climbed upon his rack and commenced scuffling with him; that Willis Juranek thereupon turned plaintiff's team into the separator so that plaintiff could not get

away; that Harold Juranek said "not to let him [plaintiff] get away"; that he did not remember seeing Harold Juranek following him or coming up to his rack, or otherwise participating in the subsequent occurrences; that after he scuffled with Degrea a few moments the rack tipped and both fell to the ground, when plaintiff sustained the injuries for which suit was instituted.

Harold Juranek denied making the statement attributed to him by plaintiff. Willis Juranek denied stopping or turning plaintiff's team. John Panka testified that Harold was working under the separator at the time of the encounter and joined the others only to pull Degrea from plaintiff. The testimony in this respect was undisputed and, in fact, corroborated by another witness. Willis Juranek testified that he did not stop the team and took no part in the plan to throw plaintiff's shoes into the separator, but endeavored to relieve plaintiff of a pitchfork with which he was threatening Degrea. Plaintiff testified that he did not remember seeing Willis Juranek climb upon his rack.

At the close of the testimony plaintiff requested the following instructions:

"1. A tort is a civil wrong and all persons participating therein are called tort feasors and all parties joining in the commission of a tort are jointly and separately liable. An action to recover for such wrong may be maintained against one or more of the wrong doers at the option of the plaintiff.

"2. Where several parties engage in a joint adventure, each party is liable for the negligence of the others. All those who by direct action or who by indirect procurement participate in or proximately cause the commission of a wrong to another are equally liable for such wrong.

"3. If in this case you find by a preponderance of the evidence, that is the greater weight of the evidence, that the named defendants with others planned and conspired to attack the plaintiff for the purpose of removing his shoes and throwing them into the threshing machine and that thereafter one or more of the parties

did attack the plaintiff, each and all the parties who joined in planning said attack or who in any manner advised, counseled or directed such attack upon the plaintiff are equally guilty of the wrong and equally liable for any injuries suffered, even though such party so advising, counseling or directing such attack did not personally participate in the attack upon the plaintiff."

The court denied plaintiff's requested instructions numbered 2 and 3 and charged the jury as follows:

"* * * Now it is the claim of the plaintiff that he was attacked by Harold Juranek, Willis Juranek, and Maynard Degrie [Degrea]; that the physical attack was made by Maynard upon him, but that the other two men aided and abetted Maynard in the attack upon the plaintiff * * *.

*     *     *     *     *

"* * * If you fail to find that Harold Juranek said, 'Do not let him get away', then that ends the case insofar as a verdict against Harold Juranek is concerned because that is the only evidence in the case, as I understand it, that connects Harold with the assault by Maynard. * * * if you fail to find that Willis in any way interfered with the horses belonging to the plaintiff when the plaintiff was on or getting onto his rack, then you cannot find a verdict against Willis because, as I understand the evidence in the case, that is the only action by Willis which might connect him with the physical assault by Maynard upon the plaintiff. * * *

*     *     *     *     *

"* * * I might say that a tort is a civil wrong and all persons participating therein are called tort-feasors and all parties joining in the commission of a tort are jointly and separately liable. An action to recover for such wrong may be maintained against one or more of the wrongdoers at the request of the plaintiff."

Plaintiff did not except to the instructions given. In his motion for a new trial he assigns as error the failure of the trial court to give his requested instructions numbered 2 and 3. He further complains of the court's instructions limiting Harold Juranek's liability

to the question of whether he made the remark "not to let him [plaintiff] get away," and of limiting Willis Juranek's liability to the question of whether he interfered with plaintiff's team so that plaintiff could not leave.

■ Plaintiff's requested instruction No. 3, which the court refused to give, would have required the jury to find defendants liable in the event they either (1) conspired to plan the attack upon plaintiff, or (2) in any manner counseled, directed, or aided such attack. Plaintiff asserts that defendants might have been found liable on either or both of such grounds.

We do not feel that the evidence would sustain a finding that defendants planned or conspired to bring about the assault upon plaintiff. Plaintiff in his own testimony relative to the conversation of the crew members while at lunch did not attribute any specific action or words to such effect to either of these defendants. His references to their part in the conversation were vague and indefinite. All the evidence indicates that such conversation was in a bantering or joking manner. Plaintiff admits that when he objected to the plan "they dropped it." The crew member actually making the statements complained of left shortly thereafter and was not present when the assault occurred.

The evidence thus outlined would clearly indicate that insofar as defendants are concerned the talk at this first conversation was entirely unrelated to anything which took place subsequently. To constitute a conspiracy, the minds of the alleged conspirators must meet upon a plan or purpose of action to achieve the contemplated result, and there is no evidence here that at the first conversation defendants participated in any such plan or conspiracy to bring about an assault upon plaintiff.

Likewise, there is nothing in the subsequent events which would sustain a finding that these defendants had planned or conspired to attack plaintiff. There being no original plan, it could not be held that subsequent events indicated the resumption of a conspiracy. Plaintiff's testimony that crew members were in a group talking, but that he was unable to hear their conversation, is far

too speculative or conjectural to support a finding that it related to a plan to assault him, and we hold that the court properly refused to submit this issue to the jury. See, Leibel v. Golden, 138 Minn. 90, 163 N. W. 991; State v. Peterson, 213 Minn. 56, 4 N. W. (2d) 826.

■ The second portion of plaintiff's requested instruction No. 3, to wit, that if defendants "in any manner advised, counseled or directed such attack upon the plaintiff [they] are equally guilty of the wrong and equally liable for any injuries suffered, even though * * * [they] did not personally participate in the attack upon the plaintiff," in our opinion constitutes a correct statement of applicable law; and if the instructions given by the trial court did not substantially cover the principle involved, reversible error would result. We are of the opinion, however, that the instructions given covered this principle insofar as it might properly be applied to the evidence submitted. As previously stated, the only action by which defendants might be held to have incurred liability for the assault were (1) the statement attributed to Harold Juranek "not to let him [plaintiff] get away"; and (2) the action attributed to Willis Juranek in turning plaintiff's team so that plaintiff could not leave. There is nothing in the record to show that defendants either "advised, counseled or directed" the attack or otherwise participated therein. The court by its instruction properly left it to the jury to determine whether the statement and incident referred to actually took place, and, if so determined, it charged the jury that defendants' liability would follow. It is obvious that if the jury were to find that defendants' testimony with reference thereto constituted a true version of the events these defendants could not be held liable for Degrea's actions, since there is no further evidence upon which liability could attach to them. Since the charge as thus given covered the second portion of plaintiff's requested instruction No. 3 insofar as the principle contained therein was applicable, no error resulted from the court's refusal to give the specific instruction requested.

Plaintiff's requested instruction No. 2 related to the liability of joint adventurers for the negligence of any one of them. Since there is no evidence that the injuries were sustained as the result of negligence in connection with the joint enterprise of the defendants in the operation of the threshing business, it is our opinion that this instruction was properly refused.

Affirmed.

